1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TAURUS A. BAKER,

Petitioner,

v.

JOE A. LIZARRAGA, Warden,

Respondent.

No.  2:19-cv-0396 KJM AC

FINDINGS AND RECOMMENDATIONS

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on a petition challenging petitioner's 2012 conviction for the first degree murder and attempted robbery of one victim and the robbery of another.  ECF No. 1.  Respondent has answered.  ECF No. 16.  Petitioner did not file a traverse.

BACKGROUND

I.      Proceedings in the Trial Court

A.  Preliminary Proceedings

Petitioner was charged in Sacramento County in 2010 with a 2006 murder and underlying attempted robbery.  1 CT 19-21.[1]  A third count was added, charging petitioner with a 2008

---

[1]  "CT" refers to the Clerk's Transcript on Appeal, Lodged Docs. 1-4, located at ECF No. 15-1 through 15-4.

1  robbery.  1 CT 25-35.  An amended information included multiple firearm enhancements and a

2  felony-murder special circumstance as to Count One.  3 CT 861-863.  The case went to trial in

3  October of 2012.  1 CT 16-17.

4        B.  The Evidence Presented at Trial

5        The jury heard evidence of the following facts.[2]  A police officer investigating a report of

6  gunshots in 2006 found Joseph Bush dead in a car in a Mack Road parking lot shared by Seafood

7  City and other businesses.  Bush was seated in the driver's seat of the car.  A pathologist opined

8  that the shooter stood about two feet from Bush.  He was killed with a .22 caliber weapon.  Police

9  did not locate any shell casings at the scene, there were no substantial leads, and the case went

10  cold.

11        More than two years later, confidential informant Alexander Honcoop arranged to buy a

12  gun and cocaine from Joel Trumbo.  Honcoop received a call from a cell phone associated with

13  petitioner; he was told to meet Trumbo at a shopping center parking lot.  Elk Grove Police

14  Sergeant Ryan Elmore monitored the transaction.  Honcoop was equipped with a recording

15  device disguised as a pager.

16        Honcoop entered a car driven by Trumbo.  Nimoy Davis and a black male with braids or

17  dreadlocks were also in the car.  Davis and the man with the dreadlocks pointed revolvers at

18  Honcoop.  They took Honcoop's money, cell phone, and pager.  Davis gave Honcoop a backpack.

19  The backpack contained a cardboard cutout of a gun and no drugs.

20        Sergeant Elmore identified Davis as one of the men in Trumbo's car.  Police found a gun

21  and some of the money Sergeant Elmore had given to Honcoop for the transaction in Davis's

22  home.  Police found petitioner's palm prints on Trumbo's car.  Davis was arrested for the

23  robbery.

24        Davis's defense attorney contacted police in 2009 about information Davis might have

25  concerning the Bush homicide.  Davis told Sacramento Police Detectives Jason Kirtlan and Henry

26  ////

27  _____

28  [2]  This factual summary is adapted from the opinion of the California Court of Appeal, Lodge
     Doc. 21 (ECF No. 15-12).

2

1   Jason that petitioner had admitted killing Bush and being caught with evidence of the homicide

2   the day after the killing.

3        Detective Kirtlan found a police report concerning police contact with petitioner the day

4   after the Bush homicide.  At that time police had apprehended petitioner in connection with a

5   report of a robbery at Adalberto's Mexican restaurant.  A police officer saw petitioner with a

6   backpack ultimately found to contain two PMC brand .22 caliber bullets.  Petitioner told the

7   police he, Francisco Ragsdale, and Kelvin Hollins saw a guy they knew from school and decided

8   to pretend to rob the guy as a joke.  Petitioner said he ran from the police because his friends ran.

9   Petitioner said Hollins was the one wearing the backpack.

10       A criminalist testified that the bullet retrieved from Bush's body and the bullets found in

11  the backpack shared the same design features.  The criminalist could not say the bullet retrieved

12  from Bush's body was manufactured by PMC.

13       Davis agreed to obtain tape-recorded admissions about the Bush homicide from petitioner.

14  He recorded about 10 meetings with petitioner.  The prosecutor played portions of those

15  recordings at petitioner's trial.

16       In one recording petitioner told Davis, "I was gonna clap that nigga. [¶] ... [¶]  He acted

17  like he (unintelligible) some thang, even though I had a gun on me (unintelligible) I was gonna

18  clap his ass." "Clap" means to shoot and "thang" refers to a gun.  When Davis asked, "where at?"

19  petitioner replied, "Mack Road."  Petitioner did not deny that he killed someone on Mack Road

20  when Davis said, "You gonna have two bodies under your belt on the Mack."  Davis testified that

21  "You gonna have two bodies under your belt on the Mack" meant that petitioner committed two

22  murders on Mack Road.

23       Petitioner provided more information about one Mack Road incident in a subsequent

24  recorded conversation.  He recounted that he and Hollins were on Mack Road "[t]rying to hit a

25  lick." "Hit a lick" means commit a robbery.  Petitioner said it was "a robbery that went bad."  He

26  said the person was trying to do something.  Petitioner said he gave the gun and backpack to

27  Hollins, and defendant ran home.  Petitioner agreed he shot someone by S and D Market, which

28  was in the same shopping center as Seafood City.

1    Petitioner said he thought his fingerprint was on the door on "[t]hat Mack Rd. shit."  He

2    said Hollins would not "tell" because then "he gotta tell on himself."  Petitioner did not deny

3    killing someone on Mack Road when Davis said he heard such rumors.  Petitioner also talked

4    about attempting to commit a robbery at Adalberto's.  He said he had "the thang;" "it's the hot

5    thing the same thing from Mack Rd. It's the hot one."  Davis testified that "hot thang" refers to a

6    gun that was used to commit a crime.  Petitioner said he ran when he saw the police and he threw

7    the gun, and while the police found the backpack with the bullets in it, the police did not find the

8    gun.

9    Detectives caused a story regarding the Bush homicide to be aired on television as part of

10   a Crime Alert seeking the public's help in solving crimes.  Petitioner acknowledged, during a

11   recorded conversation with Davis, that petitioner saw the Crime Alert story and knew he was

12   "hot."  But petitioner said, "they ain't got nothin on me."  He agreed with Davis that the police

13   did not have a witness or fingerprints.  Nevertheless, petitioner was worried about the police

14   monitoring his cell phone calls.  He expressed concern that he was going to "get the max."

15   Davis testified that petitioner had related to him in 2007 that petitioner had come across a

16   man sleeping in a car, intended to rob him, and shot the victim when the victim reached for

17   something or tried to start the car.  Davis admitted his own role in the Honcoop robbery, and

18   identified petitioner as the third robber.  He said he and petitioner used .38 caliber revolvers

19   during the Honcoop robbery.  Davis received a reduced sentence for that robbery.

20   C.  Outcome

21   The jury convicted petitioner of the murder and attempted robbery of Bush (Counts One

22   and Two), and the robbery of Honcoop (Count Three).  The jury found true the allegations that

23   petitioner was engaged in the attempted commission of a robbery when he killed Bush, that

24   petitioner intentionally and personally used a firearm during the Honcoop robbery, and that he

25   was 16 years old at the time of the offenses.  The jury found not true the allegation that defendant

26   intentionally and personally discharged a firearm during the Bush attempted robbery and murder.

27   The trial court sentenced petitioner to an aggregate determinate prison term of 13 years,

28   followed by a consecutive indeterminate term of 25 years to life.

4

1    II.    Post-Conviction Proceedings

2         Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of

3    conviction on February 22, 2017.  Lodged Doc. 12 (ECF No. 15-12).  The California Supreme

4    Court denied review on May 24, 2017.  Lodged Doc. 13 (ECF No. 15-13).

5         Petitioner filed a petition for writ of habeas corpus in the Superior Court of Sacramento

6    County in April 2018, which was denied in a written decision on June 1, 2018.  Lodged Doc. 14

7    (ECF No. 15-14).  Petitioner next filed a habeas petition in the California Court of Appeal, which

8    was denied without comment or citation on August 10, 2018.  Lodged Doc. 15 (ECF No. 15-15).

9    Petitioner then filed a habeas petition in the California Supreme Court, which was denied without

10   comment or citation on February 13, 2019.  Lodged Doc. 16 (ECF No. 15-16).

11        Petitioner filed another habeas petition in the superior court in August of 2019,

12   challenging only the restitution fine and other fees imposed as part of the judgment.  This petition

13   was denied on procedural grounds on September 23, 2019.  Lodged Doc. 17 (ECF No. 15-17).

14   Petitioner unsuccessfully sought review of the matter in the Court of Appeal.  Lodged Doc. 18

15   (ECF No. 15-18).

16        STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

17        28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

18   1996 ("AEDPA"), provides in relevant part as follows:

19        (d) An application for a writ of habeas corpus on behalf of a person
20        in custody pursuant to the judgment of a state court shall not be
          granted with respect to any claim that was adjudicated on the merits
21        in State court proceedings unless the adjudication of the claim –

22        (1) resulted in a decision that was contrary to, or involved an
          unreasonable application of, clearly established Federal law, as
23        determined by the Supreme Court of the United States; or

24        (2) resulted in a decision that was based on an unreasonable
          determination of the facts in light of the evidence presented in the
25        State court proceeding.

26        The statute applies whenever the state court has denied a federal claim on its merits,

27   whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

28   (2011).  State court rejection of a federal claim will be presumed to have been on the merits

                                          5

1   absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

2   489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

3   decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

4   may be overcome when there is reason to think some other explanation for the state court's

5   decision is more likely."  Id. at 99-100.

6       The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

7   principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

8   U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

9   Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

10   issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

11   (2013).

12       A state court decision is "contrary to" clearly established federal law if the decision

13   "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

14   U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

15   court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

16   the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

17   was incorrect in the view of the federal habeas court; the state court decision must be objectively

18   unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

19       Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

20   Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

21   reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

22   words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

23   Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

24   confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d

25   724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

26   summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a

27   state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

28   ////

6

1   must determine what arguments or theories may have supported the state court's decision, and

2   subject those arguments or theories to § 2254(d) scrutiny.  Richter, 562 U.S. at 102.

3                                    DISCUSSION

4   I.      Claim One: Unconstitutional Modification of Jury Instruction on Corpus Delicti

5              A.    Petitioner's Allegations and Pertinent State Court Record

6            Petitioner claims that his federal rights to a fair trial, due process, and the effective

7   assistance of counsel were violated when the trial court modified the agreed-on pattern instruction

8   on corpus deliciti after defense counsel had given a closing argument that relied on the pattern

9   instruction.  In the alternative, he contends that defense counsel was ineffective in arguing the

10  corpus delicti issue.  ECF No. 1 at 5, 18-23.

11           The relevant portions of the record were summarized by the California Court of Appeals

12  as follows:[3]

13                   The trial judge conducted a jury instruction conference prior to
                     closing arguments.  The only comment with regard to CALCRIM
14                   No. 359 at that conference was the trial judge's statement that the
                     instruction would be given. The parties agree the trial court said it
15                   would give an unmodified CALCRIM No. 359 instruction. At the
                     time of trial, CALCRIM No. 359 provided: "The defendant may not
16                   be convicted of any crime based on (his/her) out-of-court
                     statement[s] alone. You may only rely on the defendant's out-of-
17                   court statements to convict (him/her) if you conclude that other
                     evidence shows that the charged crime [or a lesser included offense]
18                   was committed. [¶] That other evidence may be slight and need only
                     be enough to support a reasonable inference that a crime was
19                   committed. [¶] The identity of the person who committed the crime
                     [and the degree of the crime] may be proved by the defendant's
20                   statement[s] alone. [¶] You may not convict the defendant unless the
                     People have proved (his/her) guilt beyond a reasonable doubt."
21                   (CALCRIM former No. 359 (Aug. 2006 rev.).)

22                   The trial court did not instruct the jury with CALCRIM No. 359
                     before closing arguments. It reserved some of the jury instructions
23                   until after closing arguments were presented.

24                   Regarding the count two charge for attempted robbery of Bush, the
                     prosecutor argued defendant was guilty as a direct perpetrator. In the
25                   alternative, the prosecutor said the jury could find that defendant
                     aided and abetted Hollins in attempting to commit a robbery. The
26

27   ────────────────────
     [3]  The undersigned has independently reviewed the relevant portion of the underlying record, see
28   3 RT 810, 829-960, and finds the summary to be accurate.

                                              7

prosecutor pointed to defendant's recorded statements that he intended to commit a robbery and that he had a gun.

Defense counsel, in turn, said the People's entire case on count two was based on defendant's statements to Davis. Defense counsel explained the judge would instruct the jury it could not convict defendant based on his out-of-court statements alone, and the jury could only consider defendant's out-of-court statements if it concluded other evidence showed the charged crime was committed. Defense counsel said the instruction meant the jury could not consider what defendant told Davis, and once the jury disregarded defendant's statements to Davis, the only evidence was that Bush was found dead in a car. According to defense counsel, the prosecution failed to prove attempted robbery and the felony-murder special circumstance. It appears defense counsel also argued the corpus delicti rule applied to aiding and abetting liability and felony murder.

A sidebar conference was held at the prosecutor's request following defense counsel's closing argument. According to the prosecutor, the bench notes for CALCRIM No. 359 said independent evidence is not required to prove the elements of an underlying felony when the defendant is charged with felony murder, and special circumstances when the defendant is charged with a felony-based special circumstance murder. The prosecutor asked the trial court to instruct the jury on those points based on defense counsel's closing statement.

The next court day, the prosecutor submitted a modified CALCRIM No. 359 instruction which the trial court found confusing. The trial court proposed different language. Defense counsel asked the trial court to give an unmodified CALCRIM No. 359 instruction, but if the trial court instructed with a modified instruction, defense counsel asked the trial court to instruct the jury that the corpus delicti rule applied to the charged crimes and the first and fourth elements of aiding and abetting. The prosecutor argued that a modified CALCRIM No. 359 instruction was required because defense counsel "inadvertently misargued" the corpus delicti rule.

The trial court determined it would instruct with the modified CALCRIM No. 359 instruction it proposed and permit defense counsel to re-argue. Defense counsel expressed concern that the jury might think he tried to mislead the jury. Defense counsel said he did not want to "go too much into it" with the jury.

The trial judge told the jury he and counsel modified one of the instructions to fit the case, and defense counsel would be allowed to supplement his argument based on that modification. The trial judge said the modified instruction and defense counsel's augmented closing argument should not suggest to the jury that the modified instruction was more important than or different from the other instructions.

The trial judge read the following modified CALCRIM No. 359 instruction to the jury: "The defendant may not be convicted of any

8

crime based on his out-of-court statements alone. You may only rely on the defendant's out-of-court statements to convict him if you conclude that, quote, other evidence, closed quote, shows that the charged crime was committed. That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed. [¶] The following may be proved by defendant's statements alone: The degree of the crime charged, the identity of the person who committed the crime, the elements of the underlying felony for the felony murder charge, the underlying felony for the special circumstances allegation, and the knowledge and intent requirements for aiding and abetting. [¶] You may not convict defendant unless the People have proved his guilt beyond a reasonable doubt."

Defense counsel then presented a supplemental closing argument. He explained to the jury there must be some evidence, other than defendant's out-of-court statements, to prove defendant was guilty of the murder and attempted robbery of Bush and the robbery of Honcoop. Defense counsel said independent evidence was also required for the first and fourth elements of aiding and abetting. Defense counsel added that his argument on corpus delicti was only a small portion of his case, and he only argued the corpus delicti rule after showing that the People had failed to prove its case against defendant. Defense counsel said the modified instruction did not change the fact that the People's case against defendant was based on recordings that were of "poor quality" and were insufficient to establish defendant's guilt beyond a reasonable doubt.

The prosecutor acknowledged, in rebuttal, that the corpus delicti rule applied to the charge of murder, but he argued there was more than enough evidence of a murder even without defendant's statements. The prosecutor also acknowledged that the corpus delicti rule applied to the attempted robbery and robbery counts. As for the attempted robbery count, the prosecutor said defendant attempted to rob Adalberto's the day after Bush was killed. The prosecutor argued there was no reason for defendant to kill Bush. The prosecutor also asked the jury to consider the gunshot residue on Bush's hand and shoulder. The prosecutor told the jury it could consider defendant's statements in deciding whether the underlying elements of attempted robbery occurred as it related to felony murder and in deciding the murder special circumstance, defendant's knowledge of an attempted robbery, and aiding and abetting.

Lodged Doc. 12 (ECF No. 1512) at 6-10.

###### B.  The Clearly Established Federal Law

####### 1.  Jury Instructions

Claims of error in state jury instructions are generally matters of state law, and thus may not be considered on federal habeas review.  See Gilmore v. Taylor, 508 U.S. 333, 343-44 (1993). Federal habeas relief is available only where instructional error violated due process by rendering

9

1    the trial fundamentally unfair.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  Alleged

2    instructional error "must be considered in the context of the instructions as a whole and the trial

3    record."  Id. at 72.

4                    2.   Ineffective Assistance of Counsel

5           To establish a constitutional violation based on ineffective assistance of counsel, a

6    petitioner must show (1) that counsel's representation fell below an objective standard of

7    reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v.

8    Washington, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an

9    adverse effect on the defense.  There must be a reasonable probability that, but for counsel's

10   errors, the result of the proceeding would have been different.  Id. at 693-94.  The court need not

11   address both prongs of the Strickland test if the petitioner's showing is insufficient as to one

12   prong.  Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

13   sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

14           C.   The State Court's Ruling

15          This claim was raised on direct appeal.  Because the California Supreme Court denied

16   discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned

17   decision on the merits and is the subject of habeas review in this court.  See Ylst v. Nunnemaker,

18   501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

19          The appellate court ruled in pertinent part as follows:

20                 Defendant does not claim the trial court gave an incorrect modified
                   instruction. Rather, he argues the trial court erred in modifying the
21                 instruction after defense counsel presented his closing argument
                   based on the unmodified instruction.
22

23                 "In any criminal case which is being tried before the court with a
                   jury, all requests for instructions on points of law must be made to
24                 the court and all proposed instructions must be delivered to the court
                   before commencement of argument. Before the commencement of
25                 the argument, the court, on request of counsel, must: (1) decide
                   whether to give, refuse, or modify the proposed instructions; (2)
26                 decide which instructions shall be given in addition to those
                   proposed, if any; and (3) advise counsel of all instructions to be
27                 given." (§ 1093.5.) This rule gives the parties an opportunity to
                   intelligently argue the case to the jury. (People v. Kronemyer (1987)
28                 189 Cal.App.3d 314, 341, disapproved on another point in People v.
                   Whitmer (2014) 59 Cal.4th 733, 739- 741.) "However, if, during the

                                              10

argument, issues are raised which have not been covered by instructions given or refused, the court may, on request of counsel, give additional instructions on the subject matter thereof." (§ 1093.5; *see People v. Ardoin* (2011) 196 Cal.App.4th 102, 127-128 [trial court may give a modified jury instruction after closing arguments particularly upon learning of the jury's confusion].)

Section 1093.5 is consistent with the principle that a trial court must ensure the jury is correctly instructed on the law. (*See generally People v. Frye* (1998) 18 Cal.4th 894, 1028 [A defendant "is not entitled to an instruction that misstates the law."], disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Kelly* (1992) 1 Cal.4th 495, 532 ["The court had no duty to give a legally incorrect instruction."]; *People v. Beardslee* (1991) 53 Cal.3d 68, 97 ["The court has a primary duty to help the jury understand the legal principles it is asked to apply."].)

"[T]he judge must always be alert to the possibility that counsel in the course of argument may have befuddled the jury as to the law. If this occurs, then either at the time the confusion arises or as part of the final instructive process the judge should rearticulate the correct rule of law. Just as the law imposes a sua sponte obligation to instruct on certain principles of law in the first place (those rules openly and closely connected with the case) so does it impose on the judge a duty to reinstruct on the point if it becomes apparent to him that the jury may be confused on the law." (*People v. Valenzuela* (1977) 76 Cal.App.3d 218, 221, italics omitted.)

Here, defense counsel misstated the law regarding the corpus delicti rule. As defendant now acknowledges, the rule does not apply to the elements of the underlying felony when the defendant is charged with felony murder, the felony-murder special circumstance, and the knowledge and intent requirements for aiding and abetting. (§ 190.41; *Gutierrez, supra,* 28 Cal.4th at p. 1128; *Cantrell, supra,* 8 Cal.3d at pp. 680- 681; *Miranda, supra,* 161 Cal.App.4th at pp. 101, 107-108.) The agreed-upon, unmodified CALCRIM No. 359 instruction did not address those points. Thus, the trial court could not have referred the jury to the unmodified instruction when defense counsel misspoke. (*Cf. People v. Pierce* (2009) 172 Cal.App.4th 567, 571 [trial court directed defense counsel to restate the law as set out in the jury instructions when the prosecutor objected that defense counsel's closing argument remark misstated the law].)

Moreover, nothing in the record before us indicates the trial judge or the prosecutor misled defense counsel in formulating his arguments to the jury. (*People v. Bastin* (Colo. App. 1996) 937 P.2d 761, 764 [defense counsel was not unfairly misled in formulating his closing arguments when the specific legal argument he made was not brought to the court's attention before closing arguments].) The trial judge and counsel did not discuss any exceptions to the corpus delicti rule prior to closing arguments. Under the circumstances, the trial court did not violate defendant's rights to a fair trial, due process of law, or effective assistance of counsel by correctly advising the jury on the law after defense counsel misstated the law.

*People v. Sanchez* (1978) 83 Cal.App.3d Supp. 1, a case cited by defendant, is factually distinguishable. Unlike in *Sanchez*, defense counsel's statements were not based on a point expressly approved by the trial court or expressly stated in the agreed upon unmodified instruction, and the trial judge did not interrupt defense counsel's closing argument or make a statement from which the jury might infer that defense counsel had misled the jury.

Defendant contends without explanation that his trial counsel "was deprived of whatever else he might have argued had the modified instruction been given earlier." We do not consider undeveloped perfunctory claims. (*People v. Oates* (2004) 32 Cal.4th

1048, 1068, fn. 10 (*Oates*); *People v. Earp* (1999) 20 Cal.4th 826, 881 (*Earp*).)

…

Defendant further claims he received ineffective assistance of counsel because his trial counsel misstated the law as to the corpus delicti rule.

To establish ineffective assistance of trial counsel, defendant must prove that (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to the defendant. (*People v. Maury* (2003) 30 Cal.4th 342, 389 (*Maury*); *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].) If defendant makes an insufficient showing on either one of these components, his ineffective assistance claim fails. (*People v. Holt* (1997) 15 Cal.4th 619, 703; *Strickland v. Washington, supra*, 466 U.S. at p. 687 [80 L.Ed.2d at p. 693].)

"[P]rejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*Maury, supra*, 30 Cal.4th at p. 389) It is not enough for defendant to show that errors had some conceivable effect on the outcome of the case. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217.) Defendant must show a reasonable probability of a more favorable result. (*Id.* at pp. 217-218; *Strickland v. Washington, supra*, at pp. 693-694.)

Defendant claims his trial counsel's misstatement of the law of corpus delicti during closing argument destroyed his credibility in the eyes of the jury and, thus, destroyed his defense. We disagree.

After the trial court announced its intent to instruct the jury with a modified version of CALCRIM No. 359, defense counsel expressed concern that the jury might think he tried to mislead the jury. The trial judge addressed counsel's concern by telling the jury the revised CALCRIM No. 359 instruction was not available the prior day so defense counsel would be allowed to supplement his argument based on the modification. The trial judge did not indicate that defense

counsel did anything improper. Defense counsel emphasized those portions of his original closing statements which were consistent with his augmented closing statement remarks. His primary argument – that the recordings of defendant's statements to Davis did not establish defendant's guilt of the charged offenses beyond a reasonable doubt -- was unchanged.

Nothing in the record shows that the jury perceived defense counsel's closing statement as an effort to mislead the jury. We reject defendant's ineffective assistance of counsel claim because defendant fails to demonstrate a reasonable probability of a more favorable result in the absence of his trial counsel's misstatement regarding the corpus delicti rule. (*Maury, supra*, 30 Cal.4th at p. 389; *Strickland v. Washington, sup*ra, 466 U.S. at p. 687 [80 L.Ed.2d at p. 693].)

Citing *United States v. Cronic* (1984) 466 U.S. 648 [80 L.Ed.2d 657], defendant argues he should not be required to demonstrate prejudice in this case because he was denied the assistance of counsel at the critical stage of closing argument. The United States Supreme Court identified the following circumstances where prejudice is presumed: counsel is totally absent or prevented from assisting the defendant during a critical stage of the proceeding; counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and defendant is denied the right of effective cross-examination. (*Id.* at p. 659 & fn. 25 [80 L.Ed.2d at p. 668 & fn. 25].) The Supreme Court said there are also circumstances when, although counsel is available to assist the defendant during trial, the likelihood that any lawyer could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial. (*Id.* at pp. 659-660 [80 L.Ed.2d at p. 668].) Apart from the above circumstances, the defendant must demonstrate that specific errors of counsel resulted in prejudice to establish a Sixth Amendment violation. (*Id.* at p. 659, fn. 26 [80 L.Ed.2d at p. 668, fn. 26].)

The circumstances in this case are not of a magnitude warranting a presumption of prejudice. Defendant was represented by counsel at trial. Counsel effectively cross-examined prosecution witnesses. He presented a closing argument regarding the crimes against Bush based on the theory defendant insisted upon, i.e., that defendant was not present at the scene of the crime. The closing argument did not fail "to subject the prosecution's case to meaningful adversarial testing." The trial judge concluded, in the context of an ineffective assistance of counsel claim in a motion for a new trial, that defense counsel represented defendant very ably in the case. We have no basis for disagreeing with the trial court's assessment.

Lodged Doc. 12 (ECF No. 15-12) at 10-14.

### D. Objective Reasonableness Under § 2254(d)

No U.S. Supreme Court precedent prohibits the modification of a jury instruction, in conformity with state law, after counsel has argued the case on the basis of a misunderstanding of

13

1   the law coupled with an expectation that the instruction would be different.  Neither does any

2   U.S. Supreme Court precedent provide a rule that implies or reasonably supports such a

3   prohibition.  Accordingly, there can have been no unreasonable application of clearly established

4   federal law by the California Court of Appeal, and AEDPA bars federal habeas relief for the

5   alleged instructional error.  <u>See</u> <u>Wright v. Van Patten</u>, 552 U.S. 120, 125-26 (2008) (per curiam)

6   (if the Supreme Court has not established rule on which petitioner relies, the state court's decision

7   cannot be contrary to, or an unreasonable application of, clearly established federal law).

8          As to the allegation of ineffective assistance of counsel, it was not objectively

9   unreasonable for the state court to deny the claim for lack of prejudice.  Even assuming that

10   counsel's misunderstanding of the corpus delicti rule rose to the level of incompetence, <u>Strickland</u>

11   not only permits but requires rejection of an ineffectiveness claim where there is little likelihood

12   of outcome-determinative effect; in such cases it is unnecessary to evaluate the reasonableness of

13   counsel's performance.  <u>Strickland</u>, 466 U.S. at 697.  Petitioner has not explained how counsel

14   should have argued the case under a correct understanding of California corpus delicti principles,

15   and how that would have affected the verdict.  Counsel did in fact make a supplemental argument

16   with knowledge of the correct rule and the appropriately modified instruction.  Nothing in the

17   record supports an inference that the mere fact that there were two defense arguments prejudiced

18   the jury against petitioner and influenced the verdict.  Accordingly, the assertion of prejudice is

19   entirely speculative.

20          The California Court of Appeal reasonably rejected petitioner's assertion of presumed

21   prejudice under <u>Cronic</u>, 466 U.S. 648, as no U.S. Supreme Court precedent has presumed

22   prejudice on the basis of a legally erroneous closing argument.  <u>See</u> <u>Wright</u>, <u>supra</u>.  Alleged

23   attorney error in closing argument is routinely analyzed under <u>Strickland</u>'s actual prejudice

24   standard; the undersigned has found no case in which a lower court presumed prejudice in this

25   context.  Accordingly, the state court's disposition of the matter cannot be considered an

26   unreasonable application of <u>Strickland</u> and progeny, and federal habeas relief is foreclosed.

27   ////

28   ////

1    II.      Claim Two: Sufficiency of the Evidence as to Corpus Delicti

2              A.   Petitioner's Allegations and Pertinent State Court Record

3         Petitioner contends that his conviction for the attempted robbery of Bush (Count Two) is

4    invalid because the prosecutor failed to establish the corpus deliciti of attempted robbery.  He

5    claims further that the state appellate court wrongly found the claim forfeited by failure to object

6    at trial and, in the alternative, that counsel was ineffective in failing to object.  ECF No. 1 at 7,

7    24-26.

8              B.   The Clearly Established Federal Law

9         Errors of state law, and violations of rights created by state law, do not support federal

10    habeas relief.  Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

11        Due process requires that each essential element of a criminal offense be proven beyond a

12    reasonable doubt.  United States v. Winship, 397 U.S. 358, 364 (1970).  In reviewing the

13    sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in

14    the light most favorable to the prosecution, any rational trier of fact could have found the essential

15    elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319

16    (1974).  If the evidence supports conflicting inferences, the reviewing court must presume "that

17    the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer

18    to that resolution."  Id. at 326.  "A reviewing court may set aside the jury's verdict on the ground

19    of insufficient evidence only if no rational trier of fact could have agreed with the jury."  Cavazos

20    v. Smith, 565 U.S. 1, 2 (2011) (per curiam).  In other words, a verdict must stand unless it was

21    "so unsupportable as to fall below the threshold of bare rationality."  Coleman v. Johnson, 566

22    U.S. 650, 656 (2012).

23        To establish a constitutional violation based on ineffective assistance of counsel, a

24    petitioner must show (1) that counsel's representation fell below an objective standard of

25    reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland,

26    466 U.S. 668, 692, 694.

27              C.  The State Court's Ruling

28        This issue was also decided on direct appeal.  The California Court of Appeal ruled as

15

follows:

Defendant next argues his conviction for attempted robbery must be reversed because the People failed to prove the corpus delicti of attempted robbery without relying on his out-of-court statements.

The Attorney General responds that defendant's corpus delicti claim is forfeited because he did not object on that ground in the trial court. We agree with the Attorney General. (*People v. Horning* (2004) 34 Cal.4th 871, 899 (*Horning*) [defendant may not object that the prosecution did not establish the corpus delicti of an uncharged crime when he did not object on that ground at the trial]; *People v. Martinez* (1994) 26 Cal.App.4th 1098, 1103-1104; *People v. Sally* (1993) 12 Cal.App.4th 1621, 1628; *see also People v. Martinez* (1996) 51 Cal.App.4th 537, 544.)

The trial court and counsel discussed the recordings of defendant's statements to Davis prior to trial. During those discussions, defendant did not ask the trial court to limit the jury's consideration of defendant's out-of-court statement under the corpus delicti rule. Defendant also did not object to the recordings when the prosecutor played them at trial.

Because defendant did not object on this ground, the prosecutor did not have the need or opportunity to fill any asserted evidentiary gap. The prosecutor listed Hollins as a potential witness, but did not call him to testify. The People's trial brief said Hollins told detectives defendant tried to steal Bush's car and defendant had a .22 caliber revolver. Testimony by Hollins would have supplied independent proof of the corpus delicti for attempted robbery. The prosecution might have withheld such independent proof because defendant did not raise a corpus delicti objection at trial as a strategy to avoid the presentation of more damaging evidence. (*Horning, supra*, 34 Cal.4th at p. 899 [objection that the prosecution did not establish the corpus delicti of an uncharged crime at trial would have given the prosecutor the opportunity to attempt to satisfy the evidentiary gap]; *People v. Wright* (1990) 52 Cal.3d 367, 404, disapproved on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459.) "[I]t would be inappropriate to allow a party not to object to an error of which the party is or should be aware, ' "thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not." ' " (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 501; *see People v. French* (2008) 43 Cal.4th 36, 46; *see also In re Sheena K.* (2007) 40 Cal.4th 875, 881 [rule of forfeiture encourages parties to bring errors to the attention of the trial court so that they may be corrected].)

Defendant next argues that if his appellate claim is forfeited, his trial counsel was ineffective for failing to object based on the corpus delicti rule.

The California Supreme Court has said it is particularly difficult to prevail on an appellate claim of ineffective assistance of counsel. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) We review trial counsel's performance with deferential scrutiny, indulging a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance and recognizing the many choices that attorneys make in handling cases and the danger of second-guessing an attorney's decisions. (*Maury, supra*, 30 Cal.4th at p. 389; *Strickland v. Washington, supra*, at p. 689.) "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts. [Citation.]" (*Maury, supra*, 30 Cal.4th at p. 389.) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Mai, supra*, 57 Cal.4th at p. 1009.)

Defendant's trial counsel could have reasonably believed that objecting on the ground of the corpus delicti rule and, thereby, requiring the prosecutor to call Hollins as a witness or to seek admission of Hollins's police interview statement concerning the attempted robbery of Bush would have been more damaging to defendant's case. Defendant took the position that he was not present when Bush was shot. According to the People's trial brief, Hollins would have placed defendant at the scene of the shooting. Defendant's ineffective assistance claim fails because a satisfactory explanation existed for defense counsel's failure to raise a corpus delicti objection in the trial court.

Lodged Doc. 12 (ECF No. 15-12) at 15-17.

        D.  <u>Petitioner Has Neither Presented nor Exhausted a Cognizable Federal Claim</u>

            <u>Regarding the Sufficiency of the Evidence</u>

It is axiomatic that federal habeas review is limited to claims based on the alleged violation of federal constitutional rights.  28 U.S.C. § 2254(a) (federal courts may entertain only those habeas petitions alleging violation of federally guaranteed rights).  Errors of state law, and violations of rights created by state law, do not support federal habeas relief.  See <u>Lewis</u>, 497 U.S. at 780.  The sufficiency of the evidence claim set forth in the federal petition is based entirely on California's corpus delicti rule.  See ECF No. 1 at 24-26.  Apart from the associated ineffective assistance of counsel allegation, which is discussed separately below, petitioner makes no reference to any violation of his federal constitutional rights.  <u>Id</u>.  Accordingly, the alleged corpus delicti error does not provide a cognizable basis for relief.

To the extent if any that the petition might be construed as attempting to assert a federal constitutional claim under <u>Jackson v. Virginia</u>, <u>supra</u>, such a claim is unexhausted.  Habeas

17

1    petitioners must exhaust available state court remedies, giving those courts the first opportunity to

2    correct constitutional errors.  See 28 U.S.C. § 2254(b)(1)(A); Rose v. Lundy, 455 U.S. 509, 515

3    (1982).  A petitioner satisfies the exhaustion requirement by fairly presenting his claims to the

4    highest state court before presenting them to the federal court.  Baldwin v. Reese, 541 U.S. 27, 29

5    (2004).  A federal claim is fairly presented if the petitioner has described in state court both the

6    operative facts and the federal legal theory upon which his claim is based.  See Duncan v. Henry,

7    513 U.S. 364, 365-66 (1995) (per curiam); Wooten v. Kirkland, 540 F.3d 1019, 1025 (9th Cir.

8    2008); cert. denied, 556 U.S. 1285 (2009).  The federal constitutional basis for the claim must be

9    explicitly identified.  Duncan, 513 U.S. at 365-66.

10        The sufficiency of evidence claim that was raised in petitioner's appeal and presented to

11   the California Supreme Court was based exclusively on the California law of corpus delicti, with

12   no reference to the federal constitutional rights recognized in Jackson and progeny.  See Lodged

13   Doc. 9 (ECF No. 15-9) (Appellant's Opening Brief) at 65-72; Lodged Doc. 13 (ECF No. 15-13)

14   (petition for review) at 23-26.  Petitioner did not contend in state court that his federal due

15   process rights were violated, or that federal constitutional principles entitled him to the benefit of

16   the corpus deliciti rule on Count Two.  See id.  Accordingly, any putative Jackson claim would be

17   unexhausted.

18        Finally, even if petitioner had expressly argued this claim both here and in state court as a

19   matter of his federal due process rights, he could not prevail under AEDPA standards.  The

20   Supreme Court has never held that the constitution requires states to adopt corpus deliciti rules.

21   In Jackson itself, Justice Stevens noted that the corroboration requirement that applies in federal

22   courts is "nonconstitutional" in nature and "surely would not apply in habeas review of state

23   convictions[.]"  Jackson, 443 U.S. at 330 n. 1 (Stevens, J., concurring).[4]  Absent a holding of the

24

---

25   [4]  See also Lucas v. Johnson, 132 F.3d 1069, 1078 (5th Cir. 1998) (petitioner's argument that the
     state failed to corroborate his confession did not raise an issue of constitutional dimension);
26   Aschmeller v. South Dakota, 534 F.2d 830, 832 n.1 (8th Cir. 1976) (noting that "[t]he
     corroboration rule has never been termed a constitutional requirement"); Williams v. Chapleau,
27   No. 97-6015, 2000 U.S. App. LEXIS 195, 2000 WL 32015, at *4 (6th Cir. Jan. 4, 2000)
     ("Although federal courts typically require corroboration of a criminal defendant's out-of-court
28   (continued….)

1   Supreme Court that the corpus delicti rule is required as a matter of due process, the state courts'

2   rejection of a corpus delicti claim cannot involve an unreasonable application of clearly

3   established federal law and AEDPA bars relief.  See Wright, 552 U.S. at 125-26.

4          For all these reasons, the alleged failure of proof on Count Two cannot support relief here.

5              E.   Objective Reasonableness Under § 2254(d) – Ineffective Assistance of Counsel

6          Claim Two makes a cursory assertion that if an objection was required to preserve corpus

7   delicti error for appellate review, then counsel was ineffective in failing to object.  ECF No. 1 at

8   24-26.  As was also the case in petitioner's appeal, this Strickland theory is apparently offered to

9   defeat the effect of a procedural default.[5]  To the extent if any that petitioner pursues the issue

10  here as an independent basis for relief, he fails to satisfy § 2254(d) standards.

11         The California Court of Appeal rejected the ineffective assistance argument on the merits,

12  and the undersigned finds nothing objectively unreasonable in its analysis.  The state court

13  applied the strong presumption of reasonable attorney performance that Strickland itself requires.

14  See Strickland, 466 U.S. at 689.  Petitioner has identified nothing objectively unreasonable about

15  the state court's failure to follow that presumption, or about the state court's finding that the

16  record of the case demonstrated the existence of legitimate strategic reasons not to raise the

17  corpus delicti issue in the trial court.

18         This issue was presented on direct appeal, and so the reviewing court did not go beyond

19  the record to make factual findings about trial counsel's actual reasons for failing to raise what

20  appears to have been a well-founded corpus delicti issue as to Count Two.  The court did note

21  however that the record contained a strong disincentive to raise the issue—the potential testimony

22  _____

23  admissions, ... we are aware of no authority for the proposition that the Constitution requires state courts to apply a similar rule."); Amezcua v. Lizarraga, No. 18-cv-1317 GPC (MSB), 2019 U.S. Dist. LEXIS 90109, 2019 WL 2289323, at *13 (S.D. Cal. May 29, 2019) ("Although the corpus

24  delicti rule is applied in federal criminal cases, it has not been held by the Supreme Court a requirement under the U.S. Constitution." (footnote omitted)); Sanchez v. Martinez, No. 2:17-cv-

25  0455 DB P, 2020 U.S. Dist. LEXIS 214097, 2020 WL 6724694 (E.D. Cal. Nov. 16, 2020)

26  (finding habeas claim based on corpus delicti violation defeated by lack of clearly established constitutional rule).

27  [5]  Although the corpus delicti claim may have been procedurally defaulted, respondent does not rely on default here and the claim must be denied for the independent reasons explained above.

28  Accordingly, the undersigned does not address the issue.

19

1    of a participant in the attempted robbery of Joseph Bush, which would have established the

2    corpus delicti of attempted robbery and also strengthened the prosecution's murder case by

3    placing petitioner at the scene and putting a gun in his hand.  Although "courts may not indulge

4    'post hoc rationalization' for counsel's decisionmaking that contradicts the available evidence of

5    counsel's actions," Harrington v. Richter, 562 U.S. 86, 109 (2011) (quoting Wiggins v. Smith,

6    539 U.S. 510, 526-27 (2002)), it was perfectly reasonable under Strickland for the Court of

7    Appeal to consider the strategic downsides to the course of action petitioner now urges.  In fact,

8    Supreme Court precedent requires such consideration.  See Richter, 562 U.S. at 108-109

9    (Strickland presumption of reasonable attorney performance not overcome when record suggests

10   strategic justifications for challenged conduct).  Moreover, "[w]hen § 2254(d) applies, the

11   question is not whether counsel's actions were reasonable.  The question is whether there is any

12   reasonable argument that counsel satisfied Strickland's deferential standard."  Id. at 105.  Because

13   the appellate opinion provides a reasonable argument that counsel satisfied Strickland's

14   deferential standard, relief is unavailable.

15   III.     Claim Three: Ineffective Assistance of Counsel in Pretrial Investigation

16          A.  Petitioner's Allegations and Pertinent State Court Record

17          Petitioner alleges as his third ground for relief that trial counsel was ineffective in the

18   following related ways: (1) failing to investigate Massiah[6] violations and bring a motion to

19   suppress; (2) failing to investigate whether Davis acted as an agent of the government; and (3)

20   failing to investigate whether Davis deliberately elicited incriminating statements from petitioner.

21   Petitioner alleges that these errors and omissions were unreasonable and prejudiced him.  ECF

22   No. 1 at 8, 26-43.

23          B.  The Clearly Established Federal Law

24          The federal constitutional standards governing ineffective assistance of counsel claims,

25   see Strickland v. Washington, 466 U.S at 693-94, are set forth above and incorporated by

26   reference here.

27

28   _____

6   Massiah v. United States, 377 U.S. 201 (1964).

1    In Massiah v. United States, 377 U.S. 201 (1964), the Supreme Court held that the Sixth

2    Amendment right to counsel is violated by the uncounseled interrogation of a person who has

3    been charged with a crime.  Accordingly, incriminatory statements elicited after indictment and in

4    the absence of counsel are not admissible at trial.  Id. at 206, 207.  Statements elicited by

5    undercover informants as well as those made to law enforcement are covered by the rule of

6    Massiah.  See United States v. Henry, 447 U.S. 264 (1980); Maine v. Moulton, 474 U.S. 159

7    1(985).  The advisement of rights prescribed in Miranda v. Arizona, 384 U.S. 436, 479 (1966),

8    encompasses both Fifth and Sixth Amendment rights, so a Miranda waiver also constitutes a

9    knowing an intelligent waiver of Massiah rights.  Patterson v. Illinois, 487 U.S. 285, 296-97

10   (1988).

11          C.  The State Court's Ruling

12          This claim was presented to the state courts in habeas.  Because the California Supreme

13   Court denied the petition without comment, Lodged Doc. 16 (ECF No. 15-16), this court "looks

14   through" the silent denial to the last reasoned state court decision.  See Ylst v. Nunnemaker, 501

15   U.S. 797 (1991).  Because the superior court issued the only reasoned decision adjudicating the

16   claim, that is the decision reviewed for reasonableness under § 2254(d).  See Bonner v. Carey,

17   425 F.3d 1145, 1148 n.13 (9th Cir. 2005).

18          The superior court ruled as follows:

19          Petitioner challenges the judgment against him in Sacramento
             County Superior Court Case No. 10F03061. He claims that trial
20           defense counsel was ineffective in not objecting to the admissibility
             of certain statements he made, pursuant to Massiah v. United States
21           (1964) 377 U.S. 201.

22           A habeas corpus petition must state with particularity the facts upon
             which the petitioner is relying to justify relief (In re Swain (1949) 34
23           Cal.2d 300), and be supported by reasonably available documentary
             evidence or affidavits (In re Harris (1993) 5 Cal. 4th 813, 827 fn. 5).
24           Petitioner, however, has not attached to the instant petition a copy of
             any of the statements that he claims trial counsel should have
25           challenged under Massiah.

26           Regardless, petitioner fails to set forth a valid claim under Massiah.

27           Specifically, petitioner claims Massiah error with regard to
             conversations he had on December 2, 2009, January 19, 2010,
28           January 30, 2010, and February 13, 2010, all of which predated the

                                        21

1

2

3

4

filing of the criminal complaint against him in Case No. 10F03061 on May 17, 2010. Massiah does not apply to a statement if it was made before the Sixth Amendment right to counsel has attached (Massiah, supra), and that did not occur in Case No. 10F03061 until the date of the filing of the criminal complaint (see Kirby v. Illinois (1972) 406 U.S. 682; People v. Viray (2005) 134 Cal.App. 4th 1186).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Petitioner also claims Massiah error with regard to his police interview on May 17, 2010. Although petitioner does not attach a copy of this interview to the instant petition, the court's underlying file for Case No. 10F03061 does contain a copy of the interview, the beginning of which indicates that it took place at 7: 13 p.m., which would have been after the criminal complaint was filed and the Sixth Amendment right to counsel had attached. Nevertheless, at the outset of the interview, petitioner was read his Miranda rights, and thereafter appears to have voluntarily answered questions posed to him without invoking counsel. Petitioner does not show otherwise, thus was sufficiently informed of his rights under both the Fifth and Sixth Amendment and impliedly waived those rights, including his Massiah rights (Patterson v. Illinois (1988) 487 U.S. 285, 296-297 [advisement and waiver of Miranda also constitutes advisement and waiver of Massiah]; People v. Hawthorne (2009) 46 Cal. 4th 67, 86 [implied waiver of Miranda rights by beginning to answer questions after being advised or rights, even if never asked to waive them]). Nor does petitioner show prejudice, in any event, since he admits in the instant habeas petition that during the interview he "generally denied committing any crimes or being at the scene of any crimes," "acknowledged that he was arrested with [H.] on February 9, 2006, but he maintained that the backpack belonged to [H.] and he knew nothing else about it,'" that he "'flatly denied being on Mack Road" on the day of the murder, and that he "admitted that he had spoken to [H.] in prison, but he denied talking about the murder on Mack Road," none of which would have made any difference in the outcome of the trial had it not been introduced (Strickland v. Washington (1984) 466 U.S. 668 [prejudice required to establish ineffective assistance of counsel]).

20

21

22

As reasonable counsel would have known that the law provided at the time of trial that no Massiah claim could be successfully made regarding these conversations, petitioner fails to establish ineffective assistance of counsel, requiring denial of the petition (Strickland, supra).

23

Lodged Doc. 14 (ECF No. 15-14).

24

     D.  Objective Unreasonableness Under § 2254(d)

25

       There was nothing unreasonable in the superior court's disposition of this claim.  First, it

26

is quite correct that petitioner had no right to the assistance of counsel during the conversations

27

that preceded the filing of charges against him, and that Massiah therefore provided no basis for

28

exclusion of petitioner's statements to Davis during the investigation.  As the Supreme Court

itself has emphasized, "[t]he Massiah holding rests squarely on interference with [the accused's] right to counsel." Henry, 447 U.S. at 270.  Accordingly, the Court has applied Massiah to cases in which cooperating codefendants, undercover sources, or jailhouse informants have elicited incriminating statements from *charged* criminal defendants, but has considered it "quite a different matter when the Government uses undercover agents to obtain incriminating statements from persons not in custody but suspected of criminal activity prior to the time charges are filed." Id. at 272 (citing Hoffa v. United States, 385 U.S. 293, 302 (1966) and United States v. White, 401 U.S. 745 (1971)).  The Supreme Court has never extended Massiah to the latter context, which dooms petitioner's claim as to the statements he made to Davis.  See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam) (if the Supreme Court has not established rule on which petitioner relies, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law).

Because petitioner's Sixth Amendment right to counsel had not attached when petitioner spoke to Davis, the questions whether Davis was acting as an agent of the government or deliberately elicited incriminating statements—which petitioner spends many pages briefing—are simply irrelevant.  Because a Massiah claim was not available as to the Davis conversations as a matter of law, there can be no deficient performance in counsel's failure to investigate the issue further and no prejudice from failure to bring a suppression motion.  See Strickland, 466 U.S at 693-94.

As for petitioner's later statement to the police, after his right to counsel had attached, the state court concluded on the basis of the interrogation transcript that there had been a valid waiver of rights.  Petitioner has identified no objectively unreasonable factual finding or legal analysis underlying this conclusion, and the undersigned finds none.  Furthermore, and even if there had been no waiver, the superior court reasonably held in the alternative that any Strickland claim arising from admission of the statement would fail for lack of prejudice.  The undersigned has confirmed that the recording of Detective Kirtlan's interview of petitioner, which was played for the jury, contained only petitioner's denials and—unlike his conversations with Davis—no incriminating statements.  See 1 RT 221; 3 CT 795-843 (transcript).  Accordingly, there is no

1   likelihood that suppression of the statement would have made any difference to the outcome.

2         For all these reasons, the state court's denial of petitioner's <u>Strickland</u> claim cannot be

3   considered objectively unreasonable.

4                                 <u>CONCLUSION</u>

5         For all the reasons explained above, the state courts' denial of petitioner's claims was not

6   objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Accordingly, IT IS

7   HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

8         These findings and recommendations are submitted to the United States District Judge

9   assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

10   after being served with these findings and recommendations, any party may file written

11   objections with the court and serve a copy on all parties.  Such a document should be captioned

12   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

13   he shall also address whether a certificate of appealability should issue and, if so, why and as to

14   which issues.  <u>See</u> 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

15   within fourteen days after service of the objections.  The parties are advised that failure to file

16   objections within the specified time may waive the right to appeal the District Court's order.

17   <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

18   DATED: July 20, 2023

19

20   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28